UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| HOWARD L. HOWELL, Lead Plaintiff, ELLISA PANCOE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> JBI, INC., f/k/a 310 HOLDINGS, INC., JOHN BORDYNUIK, and RONALD BALDWIN, JR., <br><br> Defendants. | Case No. 3:11-CV-00545-RCJ-WGC |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONSENTED TO MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES**

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT .................................................................... 1

II.  OVERVIEW OF THE LITIGATION ............................................................ 3

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 6

    A.  The Standards for Preliminary Approval ............................................. 6

    B.  The Proposed Settlement Is Fair, Reasonable and Adequate ............................ 8

        1.  The Proposed Settlement Was Negotiated by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation ..................... 8

        2.  The Proposed Settlement Resulted from Arm's Length Negotiations and Is  Presumed to Be Fair to the Class ............................................... 10

        3.  The Plan of Allocation Is Also Reasonable......................................... 11

    C.  The Proposed Forms and Method of Providing Notice to the Class Are Appropriate and Satisfy Fed. R. Civ. P. 23, the PSLRA, and Due Process...... 13

IV.  THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ...................................................................................... 17

    A.  The Class is Sufficiently Numerous to Warrant Certification......................... 18

    B.  There Are Substantial Common Questions of Law and Fact ........................... 19

    C.  Plaintiffs' Claims are Typical of Other Class Members ................................. 20

    D.  Plaintiffs and Lead Counsel Have Adequately Represented the Class............. 20

    E.  The Predominance and Superiority Requirements Are Satisfied .................... 21

V.  PROPOSED SETTLEMENT SCHEDULE .................................................... 22

VI.  CONCLUSION.................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

Cases

*Acosta v. Trans Union*,
     243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................ 7

*Amchem Prods., Inc. v. Windsor*,
     521 U.S. 591 (1997) ................................................................................17, 21

*Diamond Chem. Co. v. Akzo Nobel Chems. B.V.*,
     205 F.R.D. 33 (D.D.C. 2001)...............................................................................16

*Blackie v. Barrack*,
     524 F.2d 891(9th Cir. 1975), ...............................................................................17

*Churchill Village, L.L.C. v. Gen. Elec.*,
     361 F.3d 566 (9th Cir. 2004) ...............................................................................13

*Epstein v. MCA, Inc.*,
     50 F.3d 644 (9th Cir. 1995), ...............................................................................18

*Gerardo v. Quong Hop & Co.*,
     No. C 08-3953 JF (PVT), 2009 WL 1974483 (N.D. Cal. Jul. 7, 2009) ................................11

*Gordon v. Hunt*,
     117 F.R.D. 58 (S.D.N.Y. 1987) ...............................................................................16

*Gribble v. Cool Transports Inc.*,
     No. CV 06-04863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ....................11

*Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998) ........................................................17, 18, 19, 20

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
     127 F. Supp. 2d 418 (S.D.N.Y. 2001)...............................................................................12

*In re Am. Honda Motor Co., Oil Filter Prods. Liab. Litig.*,
     MDL No. 06-1737-CAS-PLAx, 2009 WL 1204495 (C.D. Cal. Apr. 17, 2009)...................16

*In re Cooper Cos. Inc. Sec. Litig.*,
     254 F.R.D. 628 (C.D. Cal. 2009) ............................................................... 17-18

*In re Excess Value Ins. Coverage Litig.*,
   No. M-21-84RMB, MDL-1339, 2004 WL 1724980 (S.D.N.Y. July 30, 2004)....................10

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) .................................................11

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)....................................9

*In re Infineon Techs. AG Sec. Litig.*,
   266 F.R.D. 386 (N.D. Cal. 2009) ...................................................................................19

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .....................................................................................7, 11

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007)................10, 11, 13, 16

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ......................................................................................6

*In re THQ, Inc., Sec. Litig.*,
   No. CV 001783, 2002 WL 1832145 (C.D. Cal., Mar. 22, 2002)...........................................17

*Jaffe v. Morgan Stanley & Co., Inc.*,
   No. C 06-3903 THE, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008)........................................18

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .....................................................................................6

*Louie v. Kaiser Found. Health Plan, Inc.*,
   No. 08 cv 0795 IEG RBB, 2008 WL 4473183 S.D. Cal. Oct. 6, 2008) .............................11

*Louie v. Kaiser Found. Health Plan, Inc.*,
   2008 U.S. Dist. LEXIS 78314 (S.D. Cal. Oct. 6, 2008) .....................................................11

*Matsushita Elec. Indus. Co., Ltd. v. Epstein*,
   516 U.S. 367 (1996) ..................................................................................................18

*Nat'l Rural Telecomms. Coop. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................6, 11

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ......................................................................................6, 7

*Petrovic v. AMOCO Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ........................................................................16

*Schneider v. Traweek*,
No. 88 0905, 1990 WL 132716 (C.D. Cal., July 31, 1990) .................................17

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..........................................................................18

*Stratton v. Glacier Ins. Adm'rs, Inc.*,
No. 1:02-CV-06213 OWW DLB, 2007 WL 274423 (E.D. Cal. Jan. 29, 2007) ...................13

*True v. American Honda Motor Co., Inc.*,
2009 WL 838284 (C.D. Cal. Mar. 25, 2009) ........................................................ 7

*Welling v. Alexy*,
155 F.R.D. 654 (N.D. Cal. 1994) .....................................................................17

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ..........................................................................10

*Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*,
439 F.3d 165 (2d Cir. 2006) ...........................................................................16

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ...................................................................18, 19

*Yamner v. Boich*,
No. C-92 20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ....................17

Statutes

15 U.S.C. §78u 4 ............................................................................................ 8

15 U.S.C. §78u 4(a)(4) ...................................................................................11

15 U.S.C. §78u 4(a)(7) ...................................................................................14

15 U.S.C. §78u 4(a)(7)(A) ...............................................................................15

15 U.S.C. §78u 4(a)(7)(B) ...............................................................................15

15 U.S.C. §78u 4(a)(7)(C) ...............................................................................15

15 U.S.C. §78u 4(a)(7)(D) ...............................................................................15

15 U.S.C. §78u 4(a)(7)(E) ...............................................................................................15

MCL §21.312, at 294 .......................................................................................................17

MCL §21.633, at 321 .......................................................................................................16

Rules

Fed. R. Civ. P. 23 .....................................................................................................passim

Fed. R. Civ. P. 23(a) ...................................................................................................18, 21

Fed. R. Civ. P. 23(b) ...................................................................................................18, 21

Fed. R. Civ. P. 23(c)(2) ...................................................................................................13

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................16

Fed. R. Civ. P. 23(e) ...................................................................................................6, 13

Rule 23(a)(1) ....................................................................................................................18

Rule 23(a)(4) ....................................................................................................................21

Rule 23(b)(3) ....................................................................................................................21

Rule 23(b)(3)(D) ...............................................................................................................17

Rule 23(c)(3) ....................................................................................................................13

Other Authorities

4 Herbert Newberg & Alba Conte, Newberg on Class Actions §11:25 (4th ed. 2002) ..............7

Manual for Complex Litigation § 21.632 (4th ed. 2004) ...........................................................7

Manual for Complex Litigation §13.14 (4th ed. 2004) ..............................................................6

5 James Wm. Moore, *Moore's Federal Practice* ¶3.83 (3d ed. 2001).......................................7

## I.   PRELIMINARY STATEMENT

The Parties have reached a proposed settlement of this securities class action (the "Proposed Settlement") in which Defendant JBI, Inc., formerly 310 HOLDINGS, Inc. ("JBI" or the "Company") shall issue shares of its authorized but unissued common stock to fund the Settlement ("JBI Settlement Shares").  The number of shares will be dependent on the price of JBI shares as of the date of entry of the Final Judgment (the "Judgment Date"), attached as Exhibit B to the Stipulation of Settlement dated August 8, 2013 (the "Stipulation").[1]  In no event will the number of JBI Settlement Shares be less than 1.75 million. [2]

Lead Plaintiff Howard L. Howell and Plaintiff Ellisa Pancoe (collectively "Plaintiffs") respectfully submit this Memorandum in support of the entry, to which Defendants consent,[3] of

---

[1] The Stipulation was extensively negotiated among the Parties and is attached hereto as Exhibit 1.

[2] The number of shares will be dependent on the price of JBI shares as of the Judgment Date. If the price of JBI's common stock is less than $0.50 per share (based upon the average closing price for the 90 trading days preceding the Judgment Date) on the date of the Judgment, the Company will issue three (3) million shares of common stock which will comprise the Settlement Fund.  If the price of JBI's common stock falls between $0.50 and $0.70 per share, inclusive (based upon the average closing price for the 90 trading days preceding the Judgment Date), the Company will issue two and one-half (2.5) million shares of common stock which will comprise the Settlement Fund.  If the price of JBI's common stock is more than $0.70 per share (based upon the average closing price for the 90 trading days preceding the Judgment Date) on the date of the Judgment, the Company will issue one and three-quarters (1.75) million shares of common stock which will comprise the Settlement Fund.

[3] Because Defendants consent to the relief requested in this motion, unless the Court requests further briefing, the motion is now fully submitted for the Court's review.

the accompanying Order Preliminary Approving Settlement and Providing for Notice of Proposed Settlement ("Preliminary Approval Order"),[4] which provides for:

    1.      Preliminary approval of the Proposed Settlement;

    2.      Provisionally certifying a Settlement Class;

    3.      Approval of the form and method for giving notice, as provided in the Stipulation, which describes, *inter alia*, the pendency of this action, the terms of the Proposed Settlement, Class Members' rights with respect thereto, the proposed release of claims, the proposed Plan of Allocation of the Settlement proceeds, the request for an award of attorneys' fees and expenses, and the procedures for submitting Proofs of Claim; and

    4.      Setting the date for a hearing (the "Settlement Hearing") to consider: (i) whether the Proposed Settlement provided for in the Stipulation is fair, reasonable and adequate to the Class and should be finally approved by the Court and implemented; (ii) fully certifying a Settlement Class; and (iii) Plaintiffs' Counsel's application for an award of attorneys' fees and expenses.

The Proposed Settlement is an excellent result for this Litigation.  The Proposed Settlement was reached after more than two years of litigation, which included a comprehensive investigation by Plaintiffs' counsel comprised of, among other things, a review of JBI's public filings with the United States Securities and Exchange Commission ("SEC"), press releases issued by the Company, public conference calls, media, analyst and news reports about the Company, and other publicly available data, including, but not limited to, publicly available

---

[4] The Preliminary Approval Order is attached as Exhibit A to the Stipulation and is also submitted as the proposed order herewith.

trading data relating to the price and trading volume of JBI's publicly traded securities, and interviews of former employees of JBI.  Moreover, Plaintiffs' counsel's work on the Litigation included the drafting of the Initial Complaint, a Consolidated Amended Class Action Complaint, and researching and drafting mediation statements for multiple mediations.

The Proposed Settlement was the result of arm's-length negotiations conducted by experienced counsel and represents a substantial recovery of the Class's estimated damages. Lead Plaintiff submits that, while the merits of the case are strong, in light of Defendants' potential defenses, the uncertain amount of potentially recoverable damages, questions related to loss causation, and the calculation of damages, the risks of prosecuting this Litigation through trial, and the very significant recovery achieved, the Proposed Settlement is not only well within the range of reasonableness, it is an excellent result and is in the best interests of the Class.  The Proposed Settlement warrants preliminary approval by this Court so that notice of the Proposed Settlement can be distributed to members of the Class and a Settlement Hearing can be scheduled to consider final approval of the Proposed Settlement.

## II.      OVERVIEW OF THE LITIGATION

On July 28, 2011, a purported class action was filed in this Court alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 thereunder ("Federal Securities Laws") against Defendants on behalf of all those who purchased JBI's securities between August 28, 2009 and July 20, 2011, inclusive, and who were damaged thereby.  On January 16, 2012, Defendants answered the Complaint.  On May 11, 2012, the Court appointed Howard L. Howell to serve as Lead Plaintiff and designated Glancy Binkow & Goldberg LLP as Lead Counsel.

On July 10, 2012, Plaintiffs filed an Amended Class Action Complaint for Violations of the Federal Securities Laws seeking an unspecified amount of damages on behalf of all those who purchased JBI's securities between August 28, 2009 and January 4, 2012, inclusive, and who were damaged thereby.  Thereafter, the Settling Parties conferred regarding the possibility of settlement and agreed to mediate a possible resolution of the case.  Prior to mediation, the Settling Parties submitted confidential mediation statements to the mediator, David Rotman, Esq.[5]  On August 3, 2012, and September 7, 2012, the Settling Parties attended two mediation sessions under the direction of Mr. Rotman, Esq.  The Settling Parties were unable to reach a settlement as a result of those mediation sessions.  On November 5, 2012, Defendants answered the complaint filed on July 10, 2012.  Thereafter, the Court ordered Plaintiffs to re-file the complaint with the Lead Plaintiff included in the caption.

On January 3, 2013, Plaintiffs filed the Revised Amended Class Action Complaint (the "Complaint") on behalf of all those who purchased JBI's securities between August 28, 2009 and January 4, 2012, inclusive, and who were damaged thereby, against Defendants.  The Complaint seeks an unspecified amount of damages and asserts claims under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 105-b promulgated thereunder.

---

[5] Mr. Rotman, of Gregorio, Haldeman & Rotman, is "a nationally recognized mediator of complex class actions and commercial matters.  He has been effective in resolving thousands of disputes in his over twenty years of mediation.  His cases commonly involve multiple parties in legally or factually knotty matters with tens or hundreds of millions of dollars at stake."  *See* http://ghrmediation.com/html/mediators-david-rotman.html.

Thereafter, the Settling Parties again conferred regarding the possibility of settlement and agreed to mediate a possible resolution of the case.  Prior to mediation, the Settling Parties submitted confidential mediation statements to the mediator, Jed D. Melnick, Esq.[6]  On March 20, 2013, the Settling Parties attended a mediation under the direction of Mr. Melnick, in Los Angeles, California.  The Settling Parties were able to reach a basic framework for a potential settlement at the mediation.  Following the mediation, the Settling Parties negotiated and agreed to the material terms of a settlement of this Litigation.

The Plaintiffs and Lead Counsel believe that the Settlement provides the Class with a benefit now, instead of years of further uncertain litigation, including disposition of summary judgment motions, a contested trial and likely appeals, with the possibility of no recovery at all. Additionally, Plaintiffs have considered that it is uncertain whether and to what extent there is and/or will be insurance coverage available to contribute to the satisfaction of any judgment that might be obtained, and uncertain whether defendants will be able to respond to any such future judgment.  Moreover, Plaintiffs have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this litigation, as well as the difficulties and delays inherent in such litigation.  Thus, Plaintiffs believe that the Proposed Settlement, which recovers more than 19% of the Class's estimated ***maximum*** damages, is excellent and is in the best interests of the Class.

As set forth in the Stipulation, the Defendants have denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the claims alleged in the

---

[6] Mr. Melnick, of JAMS, Inc., "has been involved in the mediation and successful resolution of hundreds of complex disputes with an aggregate value in the billions of dollars.  He has mediated over 750 disputes, published articles on mediation, founded a nationally ranked dispute resolution journal and taught young mediators."  *See* http://www.jamsadr.com/melnick/

Complaint.   Nonetheless, Defendants have concluded that further conduct of the Litigation would be uncertain, protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation. Defendants also have taken into account risks inherent in any litigation, especially in complex cases like this litigation.

## III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions.  *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution"); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").

### A.   The Standards for Preliminary Approval

Fed. R. Civ. P. 23(e) requires court approval for any settlement of a class action.  Such approval involves a two-step process where the court first determines whether a proposed settlement deserves preliminary approval, and then, after notice is given to class members, whether final approval is warranted.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Manual for Complex Litigation* §13.14, at 173 (4th ed. 2004). By this motion, Lead Plaintiff requests that the Court take the first step in the approval process – preliminary approval of the Proposed Settlement.

In determining whether preliminary approval is warranted, the central issue before the Court is whether the Proposed Settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the Proposed Settlement should be given to Class Members, and a hearing scheduled to consider final Settlement approval. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *see Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004); 4 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11:25 (4th ed. 2002); *True v. American Honda Motor Co., Inc.*, 2009 WL 838284, at *3 (C.D. Cal. Mar. 25, 2009).

Preliminary approval does not require the Court to make a final determination that the Proposed Settlement is fair, reasonable and adequate.  Rather, that decision is made only at the final approval stage, after notice of the Proposed Settlement has been given to the Class Members and they have had an opportunity to voice their views of the Proposed Settlement or to exclude themselves from the Settlement.  *See* 5 James Wm. Moore, *Moore's Federal Practice* ¶ 23.83 [1], at 23-336.2 - 23-339 (3d ed. 2001); *Officers for Justice*, 688 F.2d at 625; *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.").

The Proposed Settlement meets the criteria for preliminary approval and is well within the range of what might be approved as fair, reasonable and adequate.  Lead Plaintiff, with Defendants' consent, respectfully requests that this Court enter the proposed Notice Order.

B.      **The Proposed Settlement Is Fair, Reasonable and Adequate**

1.      **The Proposed Settlement Was Negotiated by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation**

The Proposed Settlement of between 1.75 and 3 million JBI Settlement Shares constitutes more than 19% of Plaintiffs' maximum estimated damages of $7,491,115 and is therefore well within the range of fairness.   Counsel for Plaintiffs and Defendants have extensive experience in securities litigation and reached settlement only after arm's length negotiations, and substantial mediations before respected neutral mediators, David Rotman, Esq. and Jed D. Melnick, Esq.

Plaintiffs and their counsel have conducted a thorough investigation of the claims asserted in the Litigation.   Plaintiffs' counsel has, among other things, performed a thorough investigation of JBI's public filings with the SEC, the press releases issued by the Company, public conference calls, media, analyst and news reports about the Company, and other publicly available data, including, but not limited to, publicly available trading data relating to the price and trading volume of JBI's publicly traded securities, and performed interviews with former employees of JBI.   Moreover, Plaintiffs' counsel consulted with forensic accountants as well as damages and market finance experts.   The Parties have also exchanged confidential mediation briefs.   Thus, the Proposed Settlement was entered into only after Plaintiffs and their counsel conducted a thorough analysis of the legal and factual issues and the risks associated with continued litigation.

Plaintiffs' counsel, who have a great deal of experience in litigating and resolving complex securities class actions, have carefully evaluated the merits of this case and the Proposed Settlement.   Because this Litigation is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, which makes it more

difficult for investors to bring and successfully conclude securities class actions, Plaintiffs faced

not only the general risks of any litigation, but also the risks that Plaintiffs' claims might not

ultimately survive Defendants' summary judgment attacks regarding, *inter alia*, loss causation,

scienter, liability or damages.  Additionally, Plaintiffs also faced risks relating the certification

of a class in this action. [7]

    Beyond the inherent risks of any litigation, Defendants also assert various defenses.

While Plaintiffs believe they would ultimately prevail over such defenses, they recognize that

the difficulty of establishing liability at trial is significant.  Thus, the Proposed Settlement

eliminates the risk that Plaintiffs and the Class could receive no recovery.  Even if Plaintiffs had

been able to have a class certified and survived Defendants' summary judgment motions,

continued prosecution of the action would be complex, expensive and lengthy with a more

favorable outcome highly uncertain.  The Proposed Settlement represents an excellent

resolution given the substantial risks of expense and delay of continued litigation and the

maximum potential recovery the Class could have achieved had it prevailed versus the certain

and immediate recovery for the Class.  Additionally, Plaintiffs have considered that it is

uncertain whether and to what extent there is and/or will be insurance coverage available to

contribute to the satisfaction of any judgment that might be obtained, and uncertain whether

defendants will be able to respond to any such future judgment.

    In sum, Plaintiffs were armed with extensive information about the underlying facts and

the strengths and weaknesses of the case so as to reasonably assess the potential value of the

---

[7] *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal.
June 10, 2005) ("It is known from past experience that no matter how confident one may be of
the outcome of litigation, such confidence is often misplaced") (citations omitted).

case and make an intelligent appraisal of the Proposed Settlement.  Lead Plaintiff was able to evaluate the potential risks, benefits and delays of trying the case and dealing with inevitable appeals, and to weigh those considerations against the benefits of the Proposed Settlement with its significant cash payment.  Consequently, Lead Plaintiff's counsel was able to negotiate the Proposed Settlement representing a significant percentage of the Class's estimated likely damages.

> **2.      The Proposed Settlement Resulted from Arm's Length Negotiations and Is Presumed to Be Fair to the Class**

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations.  *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at \*5 (N.D. Cal. June 30, 2007); *see also Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMB, MDL-1339, 2004 WL 1724980, at \*10 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness'") (citation omitted).

Without question, the Proposed Settlement is the product of arm's-length negotiations. The Proposed Settlement was reached only after extensive investigation and mediation statements were prepared and reviewed by each side, consultation with accounting, damage, and market finance experts, and three separate mediations occurred.

Based on their familiarity with the factual and legal issues, the parties were able to negotiate the Proposed Settlement, taking into account the costs and risks of continued

litigation.  There was no collusion among the Parties.[8]  *See, e.g.*, *Mego, supra,* 213 F.3d at 458.

The negotiations were at all times adversarial and at arm's-length, and produced a result that the

Parties believe to be in their respective best interests.  Counsel for both sides have extensive

experience in securities class action litigation and are thoroughly familiar with the factual and

legal issues involved.  The opinion of experienced counsel, as here, supporting the Proposed

Settlement is entitled to considerable weight.  *Gerardo v. Quong Hop & Co.*, No. C 08-3953 JF

(PVT), 2009 WL 1974483, at *3 (N.D. Cal. Jul. 7, 2009) (fact that proponents of settlement are

experienced in this type of litigation supports preliminarily approving a proposed class action

settlement); *In re Portal Software*, 2007 WL 1991529, at *6 (preliminary approval was

warranted where experienced counsel who understood each party's claims and defenses

negotiated settlement); *Louie v. Kaiser Found. Health Plan, Inc.*, 2008 WL 4473183, at *6

(experience and views of counsel weigh in favor of preliminary approval).[9]

### 3.    The Plan of Allocation Is Also Reasonable

The Plan of Allocation for distributing the proceeds of the Net Settlement Fund (after

the payment of attorneys' fees, costs of administration, taxes, any payment under 15 U.S.C.

---

[8] Nor is there any preferential treatment of Plaintiffs or any other Class Member.  *See Louie v. Kaiser Found. Health Plan, Inc.*, 2008 U.S. Dist. LEXIS 78314, at *17 (S.D. Cal. Oct. 6, 2008). The proposed Plan of Allocation provides formulas for calculating the recognized claim of each Class Member, based on each such person's purchases of JBI common stock on the open market during the Class Period and when they sold.

[9] *See also Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).

§78u-4(a)(4), and any other court-approved payments) is described at length in the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees, and Settlement Fairness Hearing (the "Notice"), attached to the Stipulation as Exhibit A-1.  It was devised with the assistance of an experienced damages expert, taking into account the appropriate loss causation issues.  Whether a member of the Class has sustained a loss that will entitle the Class Member to recover from the Settlement Fund will depend on the calculation of a "recognized loss" for that member.   The calculation of the "recognized loss" will depend on several factors, including: (a) when each Class Member purchased the shares of JBI; and (b) whether the Class Member sold such shares during or after the Class Period and, if so, when.

The proposed Plan of Allocation is based on Plaintiffs' theory of the case and reflects Plaintiffs' contention that the price of JBI common stock was artificially inflated by reason of the allegedly false and misleading statements made by Defendants during the Class Period. There is no reason to doubt the fairness of the proposed Plan of Allocation for purposes of preliminary approval.  Even at the final-approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel."  *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

In light of the above considerations, the Proposed Settlement as a whole falls within the range of possible final approval. The Court should, therefore, grant preliminary approval of the Proposed Settlement and direct that notice of the Proposed Settlement be given to members of the Class.

C.     **The Proposed Forms and Method of Providing Notice to the Class Are Appropriate and Satisfy Fed. R. Civ. P. 23, the PSLRA, and Due Process**

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions.  The Rule provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. Fed. R. Civ. P. 23(e).  Here, the Plaintiffs propose to mail, by first class mail, individual copies of the Notice and the Proof of Claim and Release (the "Proof of Claim"), attached to the Stipulation as Exhibit A-2, to all Class Members who can be identified with reasonable effort, as well as to brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.  In addition, a summary notice (the "Summary Notice"), attached to the Stipulation as Exhibit A-3, will be published in *Investor's Business Daily*, a well-known, widely circulated business-oriented publication, and on a different day, the Summary Notice will be published on *Globe Newswire*.

As required by Fed. R. Civ. P. 23(c)(2), the Notice will inform Class Members of the claims alleged in the action, the terms of the Proposed Settlement and their rights as Class Members to opt out or object to the Settlement, or otherwise object to the Plan of Allocation and/or the proposed attorneys' fees and expenses.  *See In re Portal Software*, 2007 WL 1991529, at *7 (mailed and published notices satisfy Rule 23(c)(3)); *Stratton v. Glacier Ins. Adm'rs, Inc.*, No. 1:02-CV-06213 OWW DLB, 2007 WL 274423, at *14 (E.D. Cal. Jan. 29, 2007) ("Notice is satisfactory in the context of settlement if it fairly apprises class members of the terms of the settlement in sufficient detail to afford them the opportunity to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement.") (citation omitted); *see also Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement

in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (citation omitted).

First, the Notice satisfies these Rule 23 requirements by setting forth in plain, easily understandable language:

- The nature of the action, *see* Notice, Response to Question 2 ("What is this lawsuit about?");

- The Class definition, *see* Notice, "Security and Time Period" (p. 1) and Responses to Questions 5, 6 and 7 ("How do I know if I am part of the Settlement?," "Where are the exceptions to being included?," and "I'm still not sure if I'm included.");

- A description of the claims at issue and the defenses to those claims, *see* Notice, "Reasons for Settlement"(pp. 1-2) and Responses to Questions 2 and 4 ("What is this lawsuit about?" and "Why is there a Settlement?");

- The ability of Settlement Class Members to enter an appearance through Counsel, *see* Notice, Response to Question 16 ("Do I have a lawyer in this case?"); and

- The Class Member's ability to be excluded and the process for exclusion from the Class, *see* Notice, Responses to Questions 13-15 ("How Do I Get Out of the Class?," "If I Do Not Exclude Myself, Can I Sue the Settling Defendants for the Same Thing Later?" and "If I Exclude Myself, Can I Receive Money from the Class Action Settlement?").

Second, the Notice provides clear information about the time, date, and location of the Settlement Hearing and the process for submitting an objection to the Settlement and other relief to be requested by Plaintiffs and Lead Counsel.

Third, the Notice meets the requirements of the PSLRA, 15 U.S.C. §78u-4(a)(7), by providing:

- A cover page summarizing the information contained in the Mailed Notice. 15 U.S.C. §78u-4(a)(7); *see* Notice, cover page;

- A statement of the recovery, estimating a recovery of $0.164 per damaged share before deduction of Court approved fees and expenses and costs of notice and claims administration; the Notice further explains that under the Plan of Allocation, the actual amount recovered will vary greatly across the Class. 15 U.S.C. §78u-4(a)(7)(A); *see* Notice, "Settlement Fund" (p. 1), and Responses to Questions 8 and 9 ("What does the Settlement provide?" and "How much will my payment be?");

- A statement of the potential outcome of the case including a statement concerning the issue or issues on which the Settling Parties disagree.  15 U.S.C. §78u-4(a)(7)(B); *see* Notice, "Reasons for Settlement" (pp. 1-2) and Response to Question 4 ("Why is there a Settlement?");

- A statement of attorneys' fees or costs sought, including a summary of this information on the cover page.  15 U.S.C. §78u-4(a)(7)(C); *see* Notice, "Attorney's Fees and Expenses" (p. 3) and Response to Question 17 ("How will the lawyers be paid?");

- Information on how to contact the Claims Administrator and/or Class Counsel, including names, addresses, telephone numbers, and websites.  15 U.S.C. §78u-4(a)(7)(D); *see* Notice, "More Information" (p. 4)  and Response to Question 23 ("Are there more details about the Settlement?"); and

- A discussion of the reasons for Proposed Settlement, including the factors Plaintiffs and the Settling Defendants considered in reaching the Proposed Settlement.  15 U.S.C. §78u-4(a)(7)(E); *see* Notice, "Reasons For Settlement" (pp. 1-2) and Response to Question 4 ("Why is there a Settlement?").

Thus, the proposed Notice to be sent to the Class provides all of the information required by Rule 23 and the PSLRA.

Courts have found that notice substantially equivalent to that provided for in the instant Proposed Settlement constituted the "best notice practicable under the circumstances," satisfying

the requirements of Fed. R. Civ. P. 23(c)(2)(B). *In re Am. Honda Motor Co., Oil Filter Prods. Liab. Litig.* ("*Am. Honda*"), MDL No. 06-1737-CAS-PLAx, 2009 WL 1204495, at *4 (C.D. Cal. Apr. 17, 2009); *Diamond Chem. Co. v. Akzo Nobel Chems. B.V.*, 205 F.R.D. 33, 34 (D.D.C. 2001); *see generally* MCL §21.633, at 321-22.   Trial courts are given substantial latitude to determine fair and expedient procedures.  *See, e.g., Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999).  The generally accepted method to provide notice to class members is by direct mail and publication in newspapers. *In re Portal Software*, 2007 WL 1991529 at *7 ("The court agrees with plaintiffs that notice by mail and publication is the "best notice practicable under the circumstances"); *Am. Honda*, 2009 WL 1204495, at *4 (approving of such notice plan); *see also Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165, 176 (2d Cir. 2006) (notice by mail and publication sufficient); *Gordon v. Hunt*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987) (combination of mailed and published notice is "long-accepted norm in large class actions").

The Settling Parties have carefully drafted the notice provisions of the Proposed Settlement to provide the best notice practicable to the Settlement Class and respectfully submit that the Notice (based in part on the illustrative notice of proposed class action certification and settlement developed by the Federal Judicial Center at the request of the Subcommittee on Class Actions of the U.S. Judicial Branch's Advisory Committee on the Federal Rules of Civil Procedure) and the Summary Notice, which are annexed as Exhibits A-1 and A-3 to the Stipulation, are adequate.

Plaintiffs also respectfully request the appointment of the Gilardi & Co. LLC, an experienced and diligent administrator, as Claims Administrator.  As Claims Administrator, Gilardi & Co. LLC will be responsible for, among other things, mailing the notices to the Settlement Class, reviewing claims from Settlement Class Members, claims administration, and compiling a distribution schedule to Settlement Class Members.

This proposed notice procedure takes into account the identity and location of the Settlement Class Members and specifies the most practicable method of providing notice to

them.  The traditional methods of providing notice proposed in this case are precisely those recognized as reasonably calculated to notify class members of a proposed settlement.  *See* MCL §21.312, at 294.

## IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

At the hearing on final approval of the Settlement, the Court will be asked to grant final approval to the Settlement on behalf of the Settlement Class.  For that reason, it is appropriate for the Court to consider, at the preliminary approval stage, whether the certification of the Settlement Class appears to be appropriate.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

In the context of the proposed Settlement, the preliminary certification of a Settlement Class is warranted.[10]  The Ninth Circuit and numerous courts within the Ninth Circuit have held that class actions are generally favored in securities fraud actions.  *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). "[T]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws."  *In re THQ, Inc., Sec. Litig.*, No. CV-001783, 2002 WL 1832145, at *2 (C.D. Cal., Mar. 22, 2002), quoting *Schneider v. Traweek*, No. 88-0905, 1990 WL 132716, at *6 (C.D. Cal., July 31, 1990); *see also Yamner v. Boich*, No. C-92-20597 RPA, 1994 WL 514035, at *2 (N.D. Cal. Sept. 15, 1994) (finding that the "Ninth Circuit favors a liberal use of class actions to enforce federal securities laws"); *Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (same) (citation omitted).  "As the Ninth Circuit has so

---

[10]   Indeed, "whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

aptly stated, securities fraud cases fit Rule 23 'like a glove.'"  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) (citing *Epstein v. MCA, Inc*., 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds*, *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996)).

Under Fed. R. Civ. P. 23(a), a class may be certified if it is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the class.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  In addition, the court must find that at least one of the three conditions of Fed. R. Civ. P. 23(b) are satisfied. Under subsection (b)(3), the court must find the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).[11]

This Litigation clearly satisfies each of the requirements for the certification of a settlement class.

### A.    The Class is Sufficiently Numerous to Warrant Certification

Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable.  The number of purchasers of JBI's securities during the Class Period and who

---

[11] "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *accord Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

will be members of the Settlement Class is in the thousands.  According to JBI's Form 10-Q filed with the SEC on November 21, 2011, over 70 million shares of common stock were outstanding as of November 18, 2011.[12]   Additionally, the class members are located in numerous jurisdictions throughout the United States.   Thus, a group this large and geographically diverse is too large and unwieldy to join in a single action.  *See In re Infineon Techs. AG Sec. Litig*., 266 F.R.D. 386, 393 (N.D. Cal. 2009) ("Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks.").

### B.      There Are Substantial Common Questions of Law and Fact

A proposed settlement class has sufficient commonality to justify certification where there are substantial questions of law and fact common to the class.  *See Wolin,* 617 F.3d at 1172. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.  Here, there are numerous questions of law and fact common to the Settlement Class.  If the litigation were to proceed, such common questions would include whether the provisions of the Exchange Act were violated by the Defendants' acts as alleged in Plaintiffs' operative complaint; whether documents, including press releases and public statements issued by Defendants to the investing public misrepresented material facts about the Company and its business; and, whether the revelation of the truth about Defendants' alleged misrepresentations to the investing public resulted in a decline in the price of JBI common stock.  In the context of the Settlement Class, additional common questions include whether the Proposed Settlement is fair, reasonable, and adequate; and whether the Proposed Settlement should be approved.  Thus, the Settlement Class should be preliminarily approved.

---

[12] Available at
http://www.sec.gov/Archives/edgar/data/1381105/000121390011006335/f10q0911_jbi.htm.

### C.      Plaintiffs' Claims are Typical of Other Class Members

The claims of the Plaintiffs are typical of the claims of the other members of the Class. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Like the other Settlement Class members, the Plaintiffs purchased JBI securities during the Class Period.   Plaintiffs allege that Defendants' undisclosed misrepresentations resulted in artificial inflation of the price of the JBI securities that Plaintiffs purchased and that, upon disclosure of the alleged misrepresentations, the value of the securities purchased by Plaintiffs declined.  The other members of the Class were affected in the same ways. Similarly, the interest of the Lead Plaintiff in obtaining a fair, reasonable and adequate settlement of the claims asserted is identical to the interests of the remaining Settlement Class members.  Under the proposed Plan of Allocation, Plaintiffs will receive the same pro rata share of the Settlement Fund as the rest of the Settlement Class.   Accordingly, the typicality requirement is met.

### D.      Plaintiffs and Lead Counsel Have Adequately Represented the Class

The Plaintiffs have prosecuted the action, negotiated with Defendants and obtained a proposed Settlement representing a significant percentage of the losses allegedly suffered by members of the Settlement Class.  Pursuant to the proposed Plan of Allocation, the estimated average recovery per share of common stock will be approximately $0.164 per share before the deduction of Court-approved fees and expenses and costs of notice and claims administration. [13]

---

[13]   Plaintiffs' damage expert calculated the average recovery per share based on his assessment that there was an estimated 8,693,847 shares damaged during the Class Period.

Moreover, Plaintiffs' retained, and are represented by, highly qualified counsel with extensive experience in the prosecution of securities class actions.  *See* Docket Entry No. 14, Exhibit D. Thus, Plaintiffs have fairly and adequately protected and advanced the interests of the Settlement Class and the requirements of Rule 23(a)(4) are met.

### E.       The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, the proposed Settlement Class satisfies the requirements of Rule 23(b) in that, as described above, the questions of law or fact common to the members of the Settlement Class clearly predominate over any questions affecting individual members.  Moreover, damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws.  *Amchem Prods.,* 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem. . . ."). Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As demonstrated by the foregoing, the proposed Settlement Class satisfies each of the requirements for the certification of a class pursuant to Fed. R. Civ. P. 23(a) and at least one of the factors enumerated in Rule 23(b). The certification of the Settlement Class is, therefore, warranted.

## V.     PROPOSED SETTLEMENT SCHEDULE

The Court's entry of the proposed Preliminary Approval Order would, among other things: (i) provisionally certify, for settlement purposes, this action as a class action; (ii) direct notice of the Proposed Settlement to all members of the Class; and (iii) schedule the Settlement Hearing to consider whether the Proposed Settlement should be approved as being fair, reasonable and adequate.  As such, the Preliminary Approval Order sets a proposed schedule for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims and/or objecting to the Proposed Settlement or opting out of the Class.

Plaintiffs recommend the schedule set forth below.  The Settling Parties agree to the proposed schedule setting the Settlement Hearing a minimum of 100 days after the granting of the Preliminary Approval Order.  The Settling Parties also agree to the schedule for the other dates, as provided for in the proposed Preliminary Approval Order, which were negotiated among the Parties.

| | |
|---|---|
| Notice Mailed to Class Members (*see* Preliminary Approval Order, ¶8(a)) | Within twenty (20) days of the entry of the Preliminary Approval Order |
| Summary Notice published (*see* Preliminary Approval Order, ¶8(b)) | Within thirty (30) days of the entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses. (*see* Preliminary Approval Order, ¶15) | No later than thirty-five (35) days prior to the Settlement Hearing |
| Deadline for Objections to the Settlement, the proposed Plan of Allocation, and the request for attorneys' fees and expenses (*see* Preliminary Approval Order, ¶14) | No later than twenty-one (21) days prior to the Settlement Hearing |

| | |
|---|---|
| Deadline for requesting exclusion from the Settlement (*see* Preliminary Approval Order, ¶10) | No later than twenty-one (21) days prior to the Settlement Hearing |
| Deadline for Lead Plaintiff to file papers in further support of final approval and application for fees and expenses. (*see* Preliminary Approval Order, ¶16) | No later than ten (10) days prior to the Settlement Hearing |
| Settlement Hearing (*see* Preliminary Approval Order, ¶3) | To be determined by the Court, the Settling Parties propose that the hearing be set a minimum of 100 days after the entry of the Preliminary Approval Order |
| Deadline for submitting Proof of Claim forms (*see* Preliminary Approval Order, ¶12) | Within one hundred and twenty (120) days of the entry of the Preliminary Approval Order |

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court enter the Preliminary Approval Order, consented to by the Defendants, preliminarily certifying the Settlement Class and directing the Notice to be distributed to the members of the Class.

DATED:  September 10, 2013                **GLANCY BINKOW & GOLDBERG LLP**

By: *s/ Ex Kano S. Sams II*
Lionel Z. Glancy
Michael Goldberg
Ex Kano S. Sams II
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Lead Counsel for Plaintiffs*

**THE O'MARA LAW FIRM, P.C.**
David C. O'Mara, Esq.
Nevada State Bar No. 8599
311 E. Liberty Street
Reno, Nevada 89051
Telephone: (775) 323-1321
Facsimile: (775) 323-4082

*Liaison Counsel for Plaintiffs*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel for Plaintiffs*

**PROOF OF SERVICE BY ELECTRONIC POSTING**
**AND BY MAIL ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of a United States District Court.  I am over the age of 18 and not a party to the within action.  My business address is 1925 Century Park East, Suite 2100, Los Angeles, California  90067.

On September 10, 2013, I caused to be served the following document:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONSENTED TO MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES**

By posting this document to the ECF Website of the United States District Court for the District of Nevada, for receipt electronically by the parties listed on the attached Court's Service List and by U.S. Mail on any known non-ECF registered parties.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 10, 2013, at Los Angeles, California.


*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II

# Mailing Information for a Case 3:11-cv-00545-RCJ-WGC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Richard G. Campbell , Jr**
  rcampbell@armstrongteasdale.com,bmeich@armstrongteasdale.com,zbuzzone@armstrongteasdale.com,jasullivan@armstrongteasdale.com

- **Sarah L. Geiger**
  sarah.geiger@faegrebd.com,stephanie.rzepa@faegrebd.com

- **Lionel Z. Glancy**
  INFO@GLANCYLAW.COM,hobbit99@aol.com,cturner@glancylaw.com

- **Michael M. Goldberg**
  mmgoldberg@glancylaw.com,info@glancylaw.com

- **Patrick R. Leverty**
  pat@levertylaw.com,staff@levertylaw.com,patleverty@gmail.com,kathie@levertylaw.com

- **Michael R. MacPhail**
  michael.macphail@faegrebd.com,stephanie.rzepa@faegrebd.com

- **Bret F Meich**
  bmeich@armstrongteasdale.com,zbuzzone@armstrongteasdale.com

- **David C OMara**
  david@omaralaw.net,val@omaralaw.net,adrian@omaralaw.net

- **Robert V. Prongay**
  rprongay@glancylaw.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Ex Kano S. Sams , II**
  esams@glancylaw.com

- **Katherine W. Wittenberg**
  katherine.wittenberg@faegrebd.com,tammy.fry@faegrebd.com,jill.coil@faegrebd.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`