# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

HOWARD L. HOWELL, Lead Plaintiff,                    )
ELLISA PANCOE, Individually and on Behalf            )
of All Others Similarly Situated,                    )          3:11-cv-00545-RCJ-WGC
                                                     )
                              Plaintiffs,            )          ORDER
                                                     )
            vs.                                       )
                                                     )
                                                     )
JBI, INC., f/k/a 310 HOLDINGS, INC., JOHN            )
BORDYNUIK, and RONAL BALDWIN, JR.,                   )
                                                     )
                              Defendants.            )
                                                     )
_____             )

This securities fraud case arises out of Defendant JBI, Inc.'s ("JBI") alleged violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934. Lead Plaintiff Howard L. Howell and Plaintiff Ellisa Pancoe (collectively "Plaintiffs") brought suit on behalf of a putative class consisting of all individuals damaged by these alleged violations, and the Parties have now reached a settlement. Pending before the Court is Plaintiffs' unopposed motion (the "Motion" or "Unopposed Motion") to enter a proposed order (1) granting preliminary approval of the proposed settlement agreement; (2) provisionally certifying the proposed settlement class; (3) approving the proposed method and form of notice; and (4) scheduling a final approval hearing. (ECF No. 72). For the reasons stated herein, the Motion is denied.

## I.    FACTS AND PROCEDURAL HISTORY

The relevant background information includes (1) a brief description of the litigation leading to the settlement; (2) a description of the settlement discussions; and (3) a description of the settlement itself.

### a.   Description of the Litigation

On July 28, 2011, Plaintiffs filed the instant action, alleging violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission (the "SEC") Rule 10b-5 on behalf of a putative class comprising all those who purchased JBI's securities between August 28, 2009 and July 20, 2011 ( the "Class Period') and were damaged thereby (the "Class" or "Class Members"). (Second Am. Compl., ECF No. 55, at 35–43 [hereinafter "SAC"]). According to Plaintiffs, "throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about [JBI's] business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that [] media credits acquired by [JBI] in connection with the acquisition of JavaCo were substantially overvalued; (2) that [JBI] was improperly accounting for acquisitions; (3) that, as such, [JBI's] financial results were not prepared in accordance with [Generally Accepted Accounting Principles ("GAAP")]; (4) that [JBI] lacked adequate internal and financial controls; and (5) that, as a result of the above, [JBI's] financial statements were materially false and misleading at all relevant times. (*Id.* at 9). Plaintiffs further allege that "as a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of [JBI's] securities, Plaintiffs and other Class members have suffered significant losses and damages." (*Id.*). Plaintiffs seek an unspecified amount of damages. (*Id.* at 40).

### b.   Settlement Discussions

In August 2012, the Parties agreed to mediate a possible resolution of the case. (Motion, ECF No. 75, at 10). As part of the mediation, the Parties submitted confidential mediation statements to mediator David Rotman, whom the Parties characterize as "a nationally recognized

mediator of complex class actions and commercial matters." (*Id.* at n.6). However, after two mediation sessions, the Parties failed to reach a settlement. (*Id.* at 10).

On March 20, 2013, the Parties attended a second mediation under the direction of mediator Jed. D. Melnick, of JAMS, Inc. According to the Parties, Mr. Melnick "has been involved in the mediation and successful resolution of hundreds of complex disputes." (*Id.* at 11). During this mediation, the Parties reached "a basic framework for a potential settlement." (*Id.*). Relying on that framework, the Parties eventually agreed to the proposed settlement now before the Court (the "Settlement" or "Proposed Settlement"). (*Id.*).

### c. The Proposed Settlement

The Parties state that the total value of the Proposed Settlement is $1,429,738 (the "Settlement Amount" or "Settlement Fund"). (Proposed Allocation, ECF No. 74-7, at 3). JBI has agreed to fund the Proposed Settlement by issuing shares of its authorized, but unissued, common stock ("JBI Settlement Shares"). (Proposed Settlement ¶ 2.1, ECF No. 74-1, at 12). The number of shares to be issued is dependent on the price of JBI shares on the date of entry of final judgment in this case (the "Judgment Date"). The Parties have agreed to a complex formula for determining the precise number of shares to be issued. (*Id.*). According to the Parties, "the Proposed Settlement, which recovers more than 19% of the Class's estimated *maximum* damages, is excellent and is in the best interests [*sic*] of the Class." (Motion, ECF No. 75, at 11).

The Parties propose allocating $478,921, or 33.49% of the $1,429,738 Settlement Fund, to an award of attorney fees and expenses. (Proposed Allocation, ECF No. 74-7, at 3). However, the Parties do not propose using any portion of the $1,429,738 Settlement Fund to pay for administrative expenses. (*See id.*). Instead, JBI has separately offered to pay up to $200,000 to reimburse Plaintiffs for their mediation expenses and cover the costs of claims administration.

(Proposed Settlement ¶ 2.2, ECF No. 74-1, at 12). Accordingly, JBI has offered to pay a maximum total of $1,629,738 to settle the instant case. Under the terms of the Proposed Settlement, Class Members are entitled to 58.3% of that total. *See infra* Part II.b.i.

## II.  LEGAL STANDARDS AND ANALYSIS

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, a class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination  as to the fairness of the class settlement. Third, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

In the instant case, Plaintiffs have satisfied all but one of Rule 23's certification requirements. However, inconsistencies in Plaintiffs' moving papers preclude, at this stage, a finding that Class Counsel will fairly and adequately protect the interests of the Class, as is required by Rule 23(a)(4). These same inconsistencies, and a related failure to demonstrate the fairness and adequacy of the proposed allocation of the Settlement Fund, prevent the Court from finding that the Proposed Settlement "is fundamentally fair, adequate, and reasonable."

Likewise, misstatements in the Proposed Notice, coupled with other errors, render approval inappropriate.

### a. Conditional Class Certification

Plaintiffs seek conditional certification of a settlement class under Rule 23(a) and (b)(3). To obtain class certification, the plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). *Amchem Prods.*, 521 U.S. at 614. "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of affirmatively demonstrating that the class meets Rule 23's requirements. *Wal-Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551 (2011).

In general, "[b]efore certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal citations omitted). However, when evaluating class certification in the context of a proposed settlement, courts "must pay undiluted, even heightened, attention to class certification requirements" because "the court will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods.*, 521 U.S. at 620; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

### i. Rule 23(a)

#### 1. Numerosity

Generally, courts have held that numerosity is satisfied when the class size exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654–56 (C.D. Cal. 2000); *In re Cooper Cos. Inc. Secs. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995)). Thus, in securities cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied. *Cooper*, 254 F.R.D. at 634; *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (numerosity not an issue where the class period included 120,000 transactions involving 21,000,000 shares).

In this case, millions of JBI shares were publicly traded during the Class Period, (SAC, ECF No. 55, at 30–31), and the Class, which consists of the purchasers of JBI's securities during the Class Period, numbers in the thousands, (Mot. ECF No. 75, at 25). Therefore, the Court can safely conclude that the Class is sufficiently numerous such that the joinder of each member would be impracticable.

#### 2. Commonality

To demonstrate commonality, a plaintiff must show that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A class has sufficient commonality 'if there are questions of fact and law which are common to the class.'" *Hanlon*, 150 F.3d at 1019. As clarified in *Wal-Mart Stores, Inc. v. Dukes*, a plaintiff must demonstrate that the class members "have suffered the same injury" and that their claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S.Ct. at 2551.

Here, the complaint raises several common questions of law and fact, including (1) whether JBI violated federal securities laws by publically misrepresenting its business operations and earnings, and (2) whether the public disclosure of these alleged misrepresentations resulted in a decline in the price of JBI common stock. Were Plaintiffs to continue to press this action, the answers to these questions would result in classwide resolution of the claims asserted. Therefore, the Court finds that Plaintiffs have satisfied the commonality requirement.

### 3. Typicality

To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon*, 976 F.2d at 508. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.*

In this case, Plaintiffs' claims and the nature of their alleged losses are sufficiently similar to other Class Members' claims and alleged losses to be considered typical. Like the other Class Members, Plaintiffs purchased JBI shares during the Class Period and allegedly suffered significant losses as a result of Defendants' alleged wrongdoing. Under the Proposed Plan of Allocation of Settlement Funds (the "Proposed Allocation"), it appears that the named Plaintiffs will receive the same pro rata share of the Settlement Fund as the rest of the Class. (ECF No. 74-7, at 3).

### 4.   Adequacy of Representation

"To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). In *Hanlon*, the Ninth Circuit identified two issues for determining the adequacy of representation: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

In the instant case, the Court is entirely satisfied that the named Plaintiffs will adequately represent the putative Class. However, and as explained more fully below, the Court has concerns about the fairness, adequacy, and honesty of the Proposed Settlement, which, until resolved, prohibit the Court from finding that putative Class Counsel will adequately protect the interests of the Class. Specifically, the Court is concerned about misrepresentations in the Proposed Notice and Proposed Allocation regarding attorney fees and administrative fees. The Court is particularly troubled by the Proposed Allocation, which not only fails to list the $200,000 that the Parties have set aside for administrative fees, (*compare* Proposed Allocation, 74-7, at 3 (omitting any reference to administrative fees), *with* Proposed Settlement ¶ 2.4, ECF No. 74-1 (providing $200,000, paid by JBI, for "Administrator Expenses and to reimburse Lead Counsel for Mediation Expenses")), but also proposes an award of attorney fees significantly greater than the amount described in the Proposed Notice, (*compare* Proposed Notice, ECF No. 74-3, at 6 (providing that "Lead Counsel will ask the Court for attorneys' fees not to exceed one-fourth (1/4 or 25%) of the Settlement Fund."), *with* Proposed Allocation, 74-7, at 3 (proposing an award of attorney fees equaling 33.49% of the stated total Settlement Fund)). Whether these

defects were intentional or not, they are cause for hesitation, and until they are cured, the Court is unable to conclude that Plaintiffs' Counsel will adequately represent the interests of the Class. Accordingly, the Court cannot find, at this time, that Rule 23(a) is satisfied.

### ii.   Rule 23(b)

Rule 23(b)(3) permits certification where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" in light of, among other things, "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

This case satisfies Rule 23(b)(3)'s requirements. The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages. Moreover, adjudicating this matter as a class action is a superior approach to resolving the instant controversy because it avoids the dangers of duplicative litigation and the unfairness of inconsistent judgments. As the Ninth Circuit has aptly stated, securities fraud cases fit Rule 23 "like a glove." *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996).

### b.   Preliminary Approval of the Proposed Settlement Agreement

Courts have long recognized that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026. One inherent risk is that class counsel may collude with the defendants, "tacitly reducing the overall settlement in return for a higher attorney's fee." *Knisley*, 312 F.3d at 1125; *see Evans v. Jeff D.*, 475 U.S. 717, 733 (1986)

(recognizing that "the possibility of a tradeoff between merits relief and attorneys' fees" is often implicit in class action settlement negotiations).

To guard against this potential for class action abuse, Federal Rule 23(e) requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see Staton*, 327 F.3d at 972 n.22 (The court's role is to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees."); *Hanlon*, 150 F.3d at 1026.("[T]he settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").

The factors in a court's fairness assessment will naturally vary from case to case, but courts in the Ninth Circuit generally must weigh the *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) [hereinafter *Bluetooth*] (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). However, where, as here, "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight *Churchill* factors alone is not enough." *Id*.

Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* (citing

*Hanlon*, 150 F.3d at 1026); *accord In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products*

*Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995) (courts must be "even more scrupulous than usual in

approving settlements where no class has yet been formally certified"); *Mars Steel Corp. v.*

*Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) (Posner,

J.) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the

settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982) (Friendly, J.)

(Reviewing courts must employ "even more than the usual care"); *see also Manual for Complex*

*Litig.* § 21.612 (4th ed. 2004). Therefore, before approving a precertification settlement, this

Court must not only show that it "has explored [the *Churchill*] factors comprehensively, but also

that the settlement is not the product of collusion among the negotiating parties." *Id.* (citing *In re*

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).

       Because collusion is unlikely to be evident from the face of the settlement itself, "courts

must be particularly vigilant not only for explicit collusion, but also for more subtle signs that

class counsel have allowed pursuit of their own self-interests and that of certain class members to

infect the negotiations." *Id.* (citing *Staton*, 327 F.3d at 960); *see also Court Awarded Attorney*

*Fees, Third Circuit Task Force*, 108 F.R.D. 237, 266 (1985).[1] A few such signs are: (1) "when

---

[1] As the Third Circuit Task Force explained, "[a] special risk of abuse arises in the context of
settlements when the defendant is paying the plaintiff's attorneys' fees. *Naturally, a defendant
usually will want to know the exact extent of its total liability before agreeing to settle. As a
result, it may seek an agreement that provides for a specific attorneys' fee, a separate fund to be
established for fees, or a ceiling on the allowable fee award. These types of agreements raise a
serious problem because a plaintiff's attorney may be tempted to accept a smaller recovery for
the client in return for an agreement that he or she be paid a handsome attorney's fee.* Since the
defendant is interested only in the total size of its liability, so long as the settlement is accepted,
it often will be indifferent as to the division of the fund between the plaintiffs' recovery and the
attorneys' fees. *Third Circuit Task Force*, 108 F.R.D. at 266 (emphasis added).

counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947.

In the instant case, Plaintiffs allege that they agreed to the Proposed Settlement only after developing a thorough understanding of the merits of the case through, among other things, reviewing publically available materials related to JBI's sale of securities, interviewing former JBI employees, drafting an initial and amended complaint, preparing multiple mediation statements, and attending two separate mediations with reputable mediators. Plaintiffs also assert that the Proposed Settlement is the result of arm's-length negotiations conducted by experienced counsel, and that it represents a "substantial recovery" of the Class's estimated damages. According to Plaintiffs, the fairness and adequacy of the total settlement amount is only underscored by the foreseeable challenges that the Class would face in its efforts to succeed on the merits, the foreseeable cost and duration of litigation, and the possibility that JBI would be unable to satisfy a future judgment. (Mot. ECF No. 75, at 15).

Plaintiffs, however, have not applied these facts to the relevant *Churchill* factors, and they have failed to analyze the Proposed Settlement in light of the controlling, and more demanding, standard for reviewing precertification settlement proposals. *See Bluetooth*, 654 F.3d at 947. Additionally, Plaintiffs have failed to acknowledge that the Court must examine the settlement agreement taken as a whole, and not just the fairness or adequacy of the total amount offered. Indeed, the unopposed motion addresses only the fairness of the offered $1,429,738; it includes no argument concerning the fairness or reasonableness of the proposed allocation of the Settlement Funds. Thus, even assuming that total amount of $1,429,738 is a fundamentally fair,

adequate, and reasonable result, the Court has no basis for concluding that the proposed

allocation is fundamentally fair. Furthermore, an examination of the Proposed Plan of Allocation

reveals serious concerns with respect to holistic fairness. (*See* ECF No. 74-7, at 3).

### i. Proposed Class Members' Share of the Settlement

Under the Proposed Settlement, the amount to be paid to the entire Class will not exceed

58.3% of the total Settlement Amount, which itself represents roughly 19% of the Class

Members' maximum estimated damages, (ECF No. 75, at 14). Indeed, and without expressly

saying so, the Parties propose allocating approximately 41.7% of the funds offered by JBI to

administrative and legal fees. The Parties have failed to demonstrate that this allocation reflects a

fair result for the Class.

As an initial matter, JBI has actually offered to pay $1,629,738 for the dismissal of Class

Members' claims because, in addition to the $1,429,738 Settlement Fund, JBI has separately

offered $200,000, which the Parties do not list as part of the Settlement Fund, for the payment of

administrative fees, (*see* Proposed Settlement ¶ 2.2, ECF No. 74-1). However, the Parties cannot

seriously contend that this additional money is not part of the settlement fund simply because

they choose to characterize it as something else. Indeed, the additional $200,000 represents

additional consideration offered in exchange for settling this lawsuit. Therefore, under the

Proposed Settlement, the Parties have agreed to settle this case for a total of $1,629,738.

From those funds, the Parties propose using $478,921, or 29.4%, for an award of attorney

fees and expenses. (Proposed Allocation, ECF No. 74-7, at 3). As plainly stated in the Proposed

Allocation, this figure represents a fee award of 30% of the $1,429,738 "Settlement Amount"

plus an additional $50,000, for which there is no apparent justification. (*Id.*). The proposed

distribution of $200,000 for administrative fees represents 12.3%. From here, simple arithmetic

reveals that the Parties have proposed an agreement under which the Class Members will receive no more than 58.3% of the funds offered in exchange for their claims. This alone is cause for hesitation, and the Parties have made no effort to persuade this Court that it is a fair or reasonable result.

The greater cause for concern, however, is that the Parties, whether intentionally or otherwise, misrepresent this result in both the Proposed Allocation, (ECF No. 74-7, at 3), and the Proposed Notice, (ECF No. 74-3, at 6). Specifically, the Proposed Notice promises that "Lead Counsel will ask the Court for attorneys' fees not to exceed one-fourth (1/4 or 25%) of the Settlement Fund." (*Id.*). Another portion of the Proposed Notice similarly provides that "Lead Counsel will ask the Court for attorneys' fees of one-fourth (1/4) of the Settlement Fund." (*Id.* at 19). These promises cannot be reconciled with the Proposed Allocation, which proposes a fee award of 33.49% of the $1,429,738 stated total Settlement Fund. (*See* ECF No. 74-7, at 3). Of course, the Proposed Notice does not expressly state whether the "one-fourth" award of attorney fees would come from the $1,629,738 actual total or the $1,429,738 stated total. However, read in conjunction with Plaintiffs' other filings, it strongly implies that the attorneys will seek only an award of one-fourth of the $1,429,738, and this is flatly inconsistent with the Proposed Allocation, which, on its face, allocates 30% of the Settlement Fund plus and additional, albeit unjustified, $50,000, for an award of attorney fees and expenses. Together, these numbers equal 33.49% of the stated Settlement Fund. Even assuming that the additional $50,000 represents a proposed award of costs, which is not stated in the Proposed Allocation, the proposed fee award would equal 30% of the stated Settlement Amount—a full 5% more than what is expressly stated in the Proposed Notice. Furthermore, even assuming that the Proposed Notice contemplates a fee award of "one-fourth" of the $1,629,738 actual total, which is obviously not the case, the

proposed fee award would still equal 26.3%, which is still more than what is stated in the Proposed Notice.

Turning next to the Proposed Allocation itself, the Parties have failed to mention, in their Proposed Notice or the instant motion, that any sum, let alone 12.3% of the total settlement, is earmarked for administrative fees. Instead, the Parties, through their silence, appear to imply that this money is simply not part of the settlement; it is simply a sum paid by JBI to which the Class has no claim. The Court disagrees. Any money paid by a defendant in exchange for the dismissal of Class Members' claims is part of the total settlement fund. The Parties cannot shield certain allocations from the required precertification fairness inquiry by defining them as something other than a portion of the settlement fund. Indeed, this is the exact sort of behavior that *Bluetooth* requires this Court to vigilantly guard against. *See*, 654 F.3d 935.

The Court will not approve a precertification settlement without full disclosure and justification of the proposed allocation of settlement funds. Therefore, in order to obtain this Court's approval, the Parties must correct their proposals to accurately reflect the intended allocation of the entire settlement fund. Moreover, the Parties must justify these allocations and thereby show that the proposed 58.3% left for the Class represents a fundamentally fair, adequate, and reasonable result.

### ii.  Proposed Award of Attorney Fees and Allocation of Administrative Fees

The Court recognizes that it need not directly address a proposed allocation of attorney fees until the settlement becomes final. However, the Parties must, to some degree, justify the proposed award at this stage because any award of fees will directly reduce the amount payable to the Class, and thus bears on the present fairness inquiry. *Martinez v. Realogy Corp.*, No. 3:10-CV-00755-RCJ-VPC, 2013 WL 5883618, at *6 (D. Nev. Oct. 30, 2013).

This is a common fund case. Under regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision. The plaintiffs' lawyers then apply to the court for a fee award from the fund. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (in a common fund case, "a court has control over the fund—even one created pursuant to a settlement, as here . . . and assesses the litigation expenses against the entire fund so that the burden is spread proportionally among those who have benefited.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)). In setting the amount of common fund fees, the district court has a special duty to protect the interests of the class. On this issue, the class's lawyers occupy a position adversarial to the interests of their clients. *Staton*, 327 F.3d 938 at 970. As the Ninth Circuit has explained,

> [b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. *Rubber-stamp approval, even in the absence of objections, is improper.*

*Id.* (emphasis added) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002)) (internal quotation marks omitted); *see also In re Coordinated Pre-trial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997) ("In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid. Their interests are not represented in the fee award proceedings by the lawyers seeking fees from the common fund.").

An award of attorney fees for creating a common fund may be calculated in one of two ways: (1) a percentage of the funds created; or (2) "the lodestar method, which calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Graulty*, 886 F.2d at 272. The Ninth Circuit has approved either method for

determining a reasonable award of fees. *Id.* However, the fee award must always be reasonable under the circumstances. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).

The typical range of acceptable attorney fees in the Ninth Circuit is 20% to 33% of the total settlement value, with 25% considered a benchmark percentage. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). In circumstances where a percentage recovery would be too small or too large in light of the hours worked or other relevant factors, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation." *Torrisi*, 8 F.3d at 1376 (citations omitted).

Here, Counsel has not provided a basis for concluding that the proposed fee award is reasonable. However, the Court assumes from the requested award of 30% to 33.49% that Counsel will rely on the percentage-of-the-fund approach to support the proposed allocation. If this is the case, Counsel must make a strong showing under the *Vizcaino* factors, because an award of 33.3% is at the highest end of the acceptable range and a full 8.3% higher than the Ninth Circuit's "bench mark." Alternatively, Counsel could rely on the lodestar method as a basis for the proposed fee. Again, though, Counsel would be required to show that the Proposed Settlement can support the multiplier necessary to yield a fee of $478,921. In either case, prior to a grant of precertification approval, Counsel must clearly articulate and justify its proposed award.

Furthermore, the Parties must justify the proposed allocation of $200,000 (or 12.3% of the total Settlement Fund) for claims administration. An allocation for claims administration is, of course, appropriate in this case. However, the amount allocated must be reasonable

under the circumstances. Here, $200,000 appears unreasonably high. Moreover, even if this is an appropriate amount, the Court has no way of knowing it, because the Parties have failed to even acknowledge, let alone justify, the allocation in any of their moving papers. Accordingly, to the extent that the Parties intend to amend their filings to properly list the proposed allocation of administrative expenses, they must also justify the amount sought.

### c.   The Proposed Notice

Pursuant to Federal Rule of Civil Procedure 23(e)(1), a district court, when approving a class action settlement, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Additionally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Due Process Clause, moreover, gives unnamed class members the right to notice of the settlement of a class action. *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306 (1950); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Mullane*, 339 U.S. at 318–20 (emphasis added).

The substance of the notice must describe, in plain language, the nature of the action, the definition of the certified class, and the class claims and defenses at issue. Fed. R. Civ. P. 23(c)(2)(B). The notice must also explain that class members may enter appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id*.

Finally, Pursuant to 28 U.S.C. § 1715(b), "not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed

settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement."

Here, the Proposed Notice is defective for at least three reasons: (1) as explained above, it inaccurately promises that Counsel will seek an award of attorney fees not to exceed one-fourth of the Settlement Fund, (ECF No. 74-3, at 19); (2) it fails to notify the Class that any amount, let alone 12.3% of the total amount offered to settle this case, will be used to pay administrative fees; and (3) the Parties have failed to acknowledge the notice requirements outlined in 28 U.S.C. § 1715(b), and thus the Court cannot conclude that they are prepared to comply with them. Therefore, the Court cannot find, at this point, that the Proposed Notice merits approval.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's unopposed Motion for Preliminary Approval of the Proposed Settlement and Certification of the Class (ECF No. 72) is DENIED.

IT IS SO ORDERED

Dated:  April 1, 2014

_____
ROBERT C. JONES
United States District Judge