**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| HOWARD L. HOWELL, Lead Plaintiff, ELLISA PANCOE, Individually and on Behalf of All Others Similarly Situated, <br><br>　　　　Plaintiffs, <br><br>　vs. <br><br>JBI, INC., f/k/a 310 HOLDINGS, INC., JOHN BORDYNUIK, and RONAL BALDWIN, JR., <br><br>　　　　Defendants | 3:11-cv-00545-RCJ-WGC <br><br> **ORDER** |

　　　This securities fraud case arises out of Defendant JBI, Inc.'s ("JBI") alleged violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934. Lead Plaintiff Howard L. Howell and Plaintiff Ellisa Pancoe (collectively "Plaintiffs") brought suit on behalf of a putative class consisting of all individuals damaged by these alleged violations, and the parties have now reached a settlement. On April 1, 2014, this Court entered an order denying Plaintiffs' unopposed motion for preliminary approval of a precertification settlement agreement. *See Howell v. JBI, Inc.*, 298 F.R.D. 649, 661 (D. Nev. 2014). In an apparent attempt to correct the defects identified in the Court's prior order, Plaintiffs have now filed a renewed motion for entry of a proposed order (1) granting preliminary approval of a new settlement agreement; (2) provisionally certifying the proposed settlement class; (3) approving the proposed method and form of notice; and (4) scheduling a final approval hearing. (Renewed Mot., ECF No. 84). For the reasons stated herein, the Renewed Motion is denied.

## I. FACTS AND PROCEDURAL HISTORY

On July 28, 2011, Plaintiffs filed the instant action, alleging violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission (the "SEC") Rule 10b-5 on behalf of a putative class comprising all those who purchased JBI's securities between August 28, 2009 and July 20, 2011 ( the "Class Period') and were damaged thereby (the "Class" or "Class Members"). (Second Am. Compl., ECF No. 55, at 35–43). According to Plaintiffs, "throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about [JBI's] business, operations, and prospects." (*Id.* at 9). "Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that [] media credits acquired by [JBI] in connection with the acquisition of JavaCo were substantially overvalued; (2) that [JBI] was improperly accounting for acquisitions; (3) that, as such, [JBI's] financial results were not prepared in accordance with [Generally Accepted Accounting Principles ('GAAP')]; (4) that [JBI] lacked adequate internal and financial controls; and (5) that, as a result of the above, [JBI's] financial statements were materially false and misleading at all relevant times." (*Id.*). Plaintiffs further allege that "as a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of [JBI's] securities, Plaintiffs and other Class members have suffered significant losses and damages." (*Id.*). Plaintiffs seek an unspecified amount of damages. (*Id.* at 40).

On April 1, 2014, this Court entered an order (the "Prior Order") denying Plaintiffs' unopposed motion for preliminary approval of a precertification settlement agreement. *See Howell*, 298 F.R.D. at 661. In doing so, the Court identified four critical defects in the proposed settlement (the "Prior Settlement" or "Prior Agreement"). *See infra* Part III.A. In an attempt to

remedy these defects, Plaintiffs have now filed a renewed motion (the "Renewed Motion") for preliminary approval of a new settlement agreement (the "New Agreement"). The Court now considers, and ultimately denies, the pending motion.

## II.   LEGAL STANDARD

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, a class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination as to the fairness of the class settlement. Third, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

## III.   ANALYSIS

The Court has already analyzed this case under Rule 23's certification requirements, *Howell*, 298 F.R.D. at 654–66, and it need not repeat that analysis here. Instead, the success of the pending motion depends on whether Plaintiffs have demonstrated that the New Agreement "is fundamentally fair, adequate, and reasonable." *See Hanlon*, 150 F.3d at 1026. Because

Plaintiffs have failed to satisfy this standard, preliminary approval is unwarranted, and the motion is therefore denied.

The defects in the New Agreement are all related to a single issue: Without any explanation, Plaintiffs' Counsel ("Counsel") has now agreed to a settlement worth $1,014,315 (or 62.2%) *less* than the Prior Agreement. Specifically, and despite JBI's previous offer of $1,629,738, Plaintiffs have now accepted an offer of only $615,423.[1] From this $615,423 fund (the "Total Settlement Fund"), the parties propose a Class share of $311,568 (or 50.6%) (the "Class Share"). As explained below, if approved this allocation would represent a recovery of a mere 4.2% of the Class Members' estimated $7,491,115 damages. In contrast, under the Prior Agreement, the Class would have shared more than 11% of these estimated damages. Counsel's failure to even acknowledge this discrepancy not only undermines the renewed fairness

---

[1] In the Prior Order, the Court concluded that JBI had offered a total of $1,629,738. It calculated this figure by adding the disclosed settlement offer of $1,429,738 (the "Prior Settlement Fund") to the additional $200,000 that JBI offered to pay for administrative expenses (the "Prior Claims Administration Fund"), which the parties did not disclose in the prior proposed notice. The Court explained:

> As an initial matter, JBI has actually offered to pay $1,629,738 for the dismissal of Class Members' claims because, in addition to the $1,429,738 Settlement Fund, JBI has separately offered $200,000, which the Parties do not list as part of the Settlement Fund, for the payment of administrative fees, (*see* Proposed Settlement ¶ 2.2, ECF No. 74-1). However, the Parties cannot seriously contend that this additional money is not part of the settlement fund simply because they choose to characterize it as something else. Indeed, the additional $200,000 represents additional consideration offered in exchange for settling this lawsuit. Therefore, under the Proposed Settlement, the Parties have agreed to settle this case for a total of $1,629,738.

*Howell*, 298 F.R.D. at 657. In the renewed moving papers, Plaintiffs explain that the parties have now agreed to a settlement fund (consisting of JBI stock) worth approximately $415,423 (the "Settlement Fund") and an additional $200,000 fund for claims administration (the "Claims Administration Fund"). (*See* Proposed Notice, ECF No. 86-3, at 19). Thus, the New Agreement is worth approximately $615,423.

argument, it also raises questions as to whether the New Agreement is the product of an arm's-length negotiation.

At bottom, the Court reaches two conclusions: First, Plaintiffs have arguably corrected three of the four defects identified in the Prior Order. Second, by accepting, without explanation, a settlement worth 62.2% *less* than the Prior Settlement, Plaintiffs not only fail to satisfy the Ninth Circuit's fairness standards, they also demonstrate that this settlement is even less deserving of approval than the last.

## A. Defects Identified in the Prior Order

The Court identified four critical defects in the Prior Settlement: (1) the previous version of the proposed notice misleadingly promised that Counsel would seek an award of attorney fees not to exceed one-fourth of the total settlement fund, when, in fact, the proposed allocation included an award of 30–33.49%, *Howell*, 298 F.R.D. at 658; (2) the proposed notice failed to disclose that any settlement funds, let alone $200,000 (or 12.3% of the $1,629,738 offered in settlement), would be used for administrative expenses, *id.* at 661; (3) the parties failed to justify the proposed fee award and administrative allocation, *id.* at 659–60 ; and (4) the parties proposed allocating only 58.3% of the total $1,629,738 settlement to the Class, and they made no effort to demonstrate that this was a fair or reasonable result, *id.* at 658.

The New Agreement remedies the first two defects. Specifically, Counsel now intends to seek an award of 25% of the newly proposed $415,423 Settlement Fund (or $103,855), and a $35,437 reimbursement for "mediation-related expenses" from the $200,000 Claims Administration fund. (Mem., ECF No. 85, at 10).[2] Thus, Counsel now seeks a total of $139,292.

---

[2] Of course, it goes without saying that "mediation-related expenses" are not "claims administration expenses," and it is unclear why the parties have structured their deal this way. Moreover, it is unclear why the parties insist on splitting the total amount offered in settlement

With respect to this award, the proposed notice now explains that "Lead Counsel will ask the Court for attorneys' fees not to exceed one-fourth (1/4 or 25%) of the stock component of the Settlement Fund, which as of July 10, 2014[,] is valued at $415,423." (ECF No. 86-3, at 6). The notice further provides that "[a]s part of the Settlement, Defendants have agreed to pay up to $200,000 for the claims administration of the Settlement and reimbursing Lead Counsel for certain mediation related expenses. Lead Counsel will move the Court for reimbursement of up to $35,437 in mediation related expenses and will not move the Court for the reimbursement of any other expenses." (*Id*). Therefore, the proposed notice now appears to accurately describe the proposed allocations for attorney fees and administrative expenses. This resolves the first two defects.

Counsel has arguably corrected the third defect—the failure to justify the proposed fee award and administrative allocation. With respect to attorney fees, the proposed award of 25% of the $415,423 Settlement Fund may well be reasonable. As the Court previously explained:

> The typical range of acceptable attorney fees in the Ninth Circuit is 20% to 33% of the total settlement value, with 25% considered a benchmark percentage. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). In circumstances where a percentage recovery would be too small or too large in light of the hours worked or other relevant factors, the "benchmark

---

between the $415,423 Settlement Fund and the $200,000 Claims Administration Fund—of which $35,437 will actually be used for "mediation-related expenses." This is unnecessarily confusing, and it creates the impression that Counsel has split the funds in an effort to artificially inflate the size of the Class Share (i.e., if the $415,423 Settlement Fund is treated as the denominator, then the Class share appears significantly larger, because administrative costs, and in this case, "mediation-related expenses" are not deducted from that fund. In contrast, treating the full $615,423 as the denominator reveals that the Class will actually share only 50.6% of the total amount offered in settlement).

6

percentage should be adjusted, or replaced by a lodestar calculation." *Torrisi*, 8 F.3d at 1376 (citations omitted).

*Howell*, 298 F.R.D. at 660. Here, Counsel seeks the benchmark percentage, and, assuming that the parties eventually reach an approvable settlement, nothing suggests that less is deserved. However, as applied to the instant agreement, at least one factor, "the results achieved," points toward a reduced award. Indeed, it is entirely unclear why Counsel has now agreed to a settlement worth 62.2% less than JBI's prior offer. Thus, it is likewise unclear that this significantly smaller result justifies a full benchmark fee award.

With respect to the allocation for administrative expenses, Counsel actually proposes a sum of $164,563 (or 26.7% of the $615,423 Total Settlement Fund).[3] Attempting to justify this figure, Counsel contends that "[t]he amount allocated to claims administration is based upon a bid that counsel for Plaintiffs' [*sic*] received from a reputable claims administration company, which was substantially lower than a bid that counsel for Plaintiffs'[*sic*] obtained from a competing company." (Mem., ECF No. 85, at 13). Notably, however, Counsel neither identifies the competing company nor discloses the higher bid amount. Moreover, it is unclear whether Counsel obtained any other bids. Indeed, Counsel's explanation is limited to the following footnote:

> As compared to the competing bid received by Lead Counsel, the Claims Administrator's bid of $164,563 is quite reasonable. Moreover, the reason that the claims administration is costly is that there is the large amount of damaged shares at issue, 8,693,847. Based on this large amount of damaged shares, it is assumed that there will be a substantial amount of potential Class Members, who all will need to receive notice, greatly increasing the amount of printing, posting, and claims administration costs relating to receiving and processing claims.

(*Id.* at n.8). Of course, by further explaining this competing bid, particularly as it relates

---

[3] This figure is calculated by subtracting the proposed $35,437 reimbursement for "mediation-related expenses" from the $200,000 Claims Administration Fund.

to the winning bid, Counsel may be able to demonstrate that the winning bid is reasonable. However, because this proposed allocation represents 26.7% of the Total Settlement Fund, the Court is unable to approve it without this additional explanation.

**B.  The Unexplained 62.2% Decrease in Settlement Funds**

The second issue is far more troubling, and it relates directly to Plaintiffs' earlier failure to demonstrate that the Prior Agreement represented a fair and reasonable result for the Class. In the Prior Agreement, Plaintiffs proposed, albeit unclearly, allocating 58.3% of the $1,629,738 settlement to the Class.[4] *Howell*, 298 F.R.D. at 658. According to Counsel, the Prior Settlement Fund represented "more than 19% of Plaintiffs' maximum estimated damages" of $7,491,115. (Mem., ECF No. 75, at 14). In the Prior Order, the Court faulted Plaintiffs for failing to even argue, let alone demonstrate, that the proposed Class Share of such a recovery represented a "fair, adequate, and reasonable" result for the Class. *Id.*

Now, Counsel proposes a Total Settlement Fund of only $615,423.[5] As explained above, this represents a 62.2% (or $1,014,315) decrease in agreed settlement funds. By Counsel's own admission, the $615,423 fund represents only "8.2% of the Class's estimated maximum damages" of $7,491,115, (Mem., ECF No. 85, at 13), instead of the 19% recovery represented in the Prior Agreement, (*see* Mem., ECF No. 75, at 14).

While the newly proposed plan of allocation conspicuously fails to list the proposed Class Share as a percentage of the Total Settlement Fund, (*see* Proposed Plan of Allocation, ECF No. 86-7), subtracting the other allocations reveals that the Class would

---

[4] This figure is calculated by adding the $1,429,738 Prior Settlement Fund to the $200,000 Prior Claims Administration Fund.

[5] This figure is calculated by adding the present Settlement Fund, worth approximately $415,423, to the $200,000 Claims Administration Fund.

share approximately $311,568 (50.6% of the $615,423 fund).[6] This $311,568 share represents *an actual recovery of approximately 4.2% of the Class's maximum estimated damages*. That this constitutes a "fair, adequate, and reasonable result," is hardly self-evident—particularly in light of the sharp, unexplained decrease in agreed settlement funds.

In the Renewed Motion, Plaintiffs mouth the *Churchill* factors and blithely conclude that a Total Settlement Fund representing "8.21% of Plaintiffs' estimated damages" is "well within the range of fairness." (*See* Mem., ECF No. 85, at 18–21 (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004))). As an initial matter, even if this is true, and it may well be true, it is far from dispositive. Indeed, and as this Court has emphasized, prior to approving a precertification settlement, courts must carefully scrutinize the proposed allocation of settlement funds:

> [W]here, as here, "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight *Churchill* factors alone is not enough." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)
>
> Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* (citing *Hanlon*, 150 F.3d at 1026); *accord In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995) (courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified"); *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) (Posner, J.) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982) (Friendly, J.) (Reviewing courts must employ "even more than the usual care"); *see also*

---

[6] This figure is calculated by starting with the proposed $615,423 Total Settlement Fund and subtracting the following proposed allocations: (1) $103,855 for attorney fees, (Mem., ECF No. 85, at 10); (2) $35,437 for "mediation-related expenses," (Proposed Plan of Allocation, ECF No. 86-7, at 3); and (3) $164,563 for claims administration, (*id.*).

> *Manual for Complex Litig.* § 21.612 (4th ed. 2004). Therefore, before approving a precertification settlement, this Court must not only show that it "has explored [the *Churchill*] factors comprehensively, but also that the settlement is not the product of collusion among the negotiating parties." *Id.* (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).
>
> Because collusion is unlikely to be evident from the face of the settlement itself, "courts must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* (citing *Staton*, 327 F.3d at 960); *see also Court Awarded Attorney Fees, Third Circuit Task Force*, 108 F.R.D. 237, 266 (1985). A few such signs are: (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947.

*Howell*, 298 F.R.D. at 657.

Under the confusing proposed plan of allocation, the Class would actually share an amount equal to approximately 4.2% of the estimated damages. Of course, assuming that the other proposed allocations are fair and reasonable, this 4.2% recovery may well be adequate. However, this is not immediately clear, and Plaintiffs' self-defeating attempt to justify the pre-allocation "8.21% recovery" only underscores this point. Indeed, and somewhat remarkably, Plaintiffs contend that "according to information published by Cornerstone Research . . . median settlements as a percentage of estimated damages for cases settling for less than $50 million was [*sic*] 15.1% in 2013, and was 10.7% from 1996–2012." (Mem., ECF No. 85, at 16). Here, Plaintiffs implicitly admit that even the pre-allocation Total Settlement Fund, which represents an 8.2% recovery, is just over half the size of the median 15.1% recovered in comparable 2013 settlements. This, of course, cuts against Plaintiffs' claim that a pre-allocation 8.2% recovery represents a fair result, and it certainly suggests that the actual, 4.2% post-allocation recovery is inadequate. In

short, Plaintiffs' fairness argument is not only incomplete, it is self-defeating and unpersuasive.

The greater cause for concern, however, is that Plaintiffs fail to even mention the alarming decrease in agreed settlement funds. Amplified by this Court's Prior Order, this failure speaks loudly. Indeed, in the Prior Order, the Court rejected a settlement that was 62.2% larger, reasoning, *inter alia*, that Counsel had failed to demonstrate that a Class Share of 58.3% of a 19% recovery was "fair, adequate, and reasonable." *Howell*, 298 F.R.D. at 658. Under this arrangement, the Class would have recovered and shared more than 11% of the estimated damages.

Now, however, instead of justifying the 11% recovery that the Court previously rejected, Plaintiffs attempt to justify a 4.2% recovery, without explaining the significant decrease. Surely this is cause for hesitation. Indeed, if, as Plaintiffs imply, fairness to the Class is measured by the percentage of estimated damages recovered, the Court simply cannot approve a 4.2% actual recovery, without at least some explanation, after previously rejecting an actual recovery of more than 11%. Stated another way, absent an explanation as to why Plaintiffs now propose settling this case for $1,014,315 less than JBI previously offered, the New Agreement appears less fair, and therefore less deserving of approval, than the Prior Agreement. Plaintiffs' silence on this issue not only magnifies fairness concerns, it suggests that the New Agreement is the product of the kind of self-interested, collusive negotiations that the Court warned against in the Prior Order:

> Courts have long recognized that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026. One inherent risk is that class counsel may collude with the defendants, "tacitly reducing the overall settlement in return for a higher attorney's fee." *Knisley*, 312 F.3d at 1125; *see Evans v. Jeff D.*, 475 U.S. 717, 733 (1986) (recognizing that

"the possibility of a tradeoff between merits relief and attorneys' fees" is often implicit in class action settlement negotiations).

*Howell*, 298 F.R.D. at 656. In fact, the New Agreement appears to be anything but the result of an arm's-length negotiation. Preliminary approval is therefore unwarranted, and the pending motion is denied.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' unopposed Motion for Preliminary Approval of the Proposed Settlement and Certification of the Class (ECF No. 84) is DENIED.

IT IS FURTHER ORDERED that this order DOES NOT VACATE the hearing set for August 15, 2014. The parties remain required to attend the hearing and will have an opportunity to explain their respective positions on the issues addressed herein.

IT IS SO ORDERED

Dated:  August 13, 2014.

_____
ROBERT C. JONES
United States District Judge